UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SCOTT D., | |
| Plaintiff, | CASE NO. C18-1178 BAT |
| v. | **ORDER REVERSING AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

This case presents whether the ALJ harmfully erred by determining that if plaintiff

stopped using marijuana and alcohol he would not be disabled. The Court finds that the ALJ

failed to support this conclusion with substantial evidence. The Court therefore **REVERSES** and

**REMANDS** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## **BACKGROUND**

Plaintiff is currently 31 years old and applied for Disability Insurance Benefits,

Supplemental Security Income, and Child Disability Benefits. After his applications were denied

initially and on reconsideration, in 2017 the ALJ conducted a hearing and issued a decision.

Utilizing the five-step disability evaluation process,[1] the ALJ determined at **step one** that

plaintiff has not engaged in substantial gainful activity since the alleged onset date; at **step two**

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

that plaintiff had the severe impairments of a history of traumatic brain injury, psychosis vs.

schizoaffective disorder, cognitive disorder vs. ADD/ADHD, pervasive development disorder,

anxiety related disorder (PTSD vs. generalized anxiety), affective related disorder (major

depressive disorder vs. bipolar disorder), drug and alcohol addiction, and a history of sleep

apnea; and at **step three** that these impairments did not meet or equal the requirements of a listed

impairment. Tr. 41–44. The ALJ determined that plaintiff had the **residual functional capacity**

**("RFC")** to perform a full range of work at all exertional levels but with multiple non-exertional

limitations, including that plaintiff is unable to maintain regular attendance and to be punctual

within customary tolerances secondary to mood instability caused by substance abuse. Tr. 44.

The ALJ determined at **step four** that plaintiff was unable to perform any past relevant work;

and at **step five** that there are no jobs that exist in significant numbers in the national economy

that plaintiff can perform. Tr. 46. The ALJ therefore found plaintiff to be disabled if plaintiff's

substance abuse disorder is considered. Tr. 47.

     Because the ALJ found plaintiff to be disabled and evidence of a substance use disorder

exists, the ALJ the revisited the five-step evaluation to consider whether "drug addiction and

alcoholism" ("DAA") is a contributing factor material to the determination of disability.[2] The

ALJ found that if plaintiff stopped substance use, most notably his use of marijuana, he would

have the same RFC as before except he would be able to maintain regular attendance and be

punctual within customary tolerances. Tr. 48–49. The ALJ then determined at **step four** that

plaintiff would still be unable to perform past relevant work; and at **step five** that if plaintiff

stopped substance use there would be a significant number of jobs in the national economy that

---

[2] 20 C.F.R. §§ 404.1535, 416.935. In Social Security Ruling 13-2p, the agency notes that "[a]though the terms 'drug addiction' and 'alcoholism' are medically outdated, we continue to use the terms because they are used in the Act." 2013 WL 621536, at *3.

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 2

1  he could perform. Tr. 54–55. The ALJ therefore determined that plaintiff's substance abuse

2  disorder is a contributing factor material to the determination of disability and that plaintiff is not

3  disabled. Tr. 55. As the Appeals Council denied plaintiff's request for review, the ALJ's decision

4  is the Commissioner's final decision.

5  **DISCUSSION**

6        The salient question is whether the ALJ supported with substantial evidence his

7  conclusion that plaintiff's marijuana and alcohol use is a contributing factor material to the

8  determination of disability. Although plaintiff's substance use was properly considered, the ALJ

9  cited no medical evidence from which one could reasonably infer that in the absence of

10  plaintiff's substance use his severe impairments were no longer debilitating. The Court therefore

11  reverses and remands so the ALJ may revisit the DAA analysis from the RFC assessment

12  forward and further develop the record, which may include supplemental medical examinations

13  and consultation with a medical expert. The Court rejects plaintiff's contention that the ALJ

14  erred by declining to admit evidence from 2005 or earlier; finds that plaintiff's contention

15  regarding post-hearing evidence submitted to the Appeals Council is mooted by the remand; and

16  reverses the ALJ's review of the testimony so that the testimony may be considered in

17  conjunction with the medical evidence.

18        **1.  The DAA Analysis**

19        Where relevant, an ALJ must conduct a DAA analysis and determine whether a

20  claimant's disabling symptoms remain absent the use of drugs or alcohol. 20 C.F.R.

21  §§ 404.1535, 416.935. That is, the ALJ must first identify disability under the five-step

22  procedure and then conduct a DAA analysis to determine whether substance abuse is material to

23  disability. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). If the remaining

1    limitations without DAA would still be disabling, then the claimant's drug addiction or

2    alcoholism is not a contributing factor material to his disability. If the remaining limitations

3    would not be disabling without DAA, then the claimant's substance abuse is material and

4    benefits must be denied. *Parra v. Astrue*, 481 F.3d 742, 747–48 (9th Cir. 2007). Plaintiff bears

5    the burden of proving that DAA is not a contributing factor material to his disability. *Id.* at 748.

6    Insufficient evidence as to the issue of materiality cannot satisfy a plaintiff's burden of proving

7    his substance use is not a material factor. *Id.* 749–50. If a plaintiff cannot establish that his DAA

8    is not material, then the ALJ repeats the five-step sequential evaluation process for determining

9    whether plaintiff is disabled, absent the limiting effects of DAA. *Id.* at 747–50.

10         Here plaintiff argues that the ALJ harmfully erred by considering DAA based on

11    "passing references" to a substance abuse disorder, Dkt. 18, at 7; Dkt. 20, at 2; and by failing to

12    support with substantial evidence the determination that DAA was material. The Court finds that

13    the ALJ did not err by considering DAA based on the diagnosis of substance use disorder found

14    in the medical record. *See, e.g.*, Tr. 750 ("marijuana abuse in recent sustained remission"), 1478

15    ("cannabis abuse-contin[ued]), 2024 ("THC use disorder. Tox screen was positive for THC.").

16    Nonetheless, the Court finds that the ALJ failed to support with substantial evidence the

17    materiality of plaintiff's substance use.

18         Although the ALJ asserted that "[w]hile abusing drugs and/or alcohol, the claimant

19    experienced a worsening of his mental-health symptoms," Tr. 44, the evidence cited by the ALJ

20    does not indicate the degree to which plaintiff's symptoms were affected by substance use, and

21    does not imply that in the absence of substance abuse plaintiff would be able to maintain regular

22    attendance and be punctual within customary tolerances. While doctors have noted plaintiff's use

23    of marijuana, recommended marijuana cessation, and provided education about how marijuana

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 4

use can affect mental health symptoms, no doctor has suggested that if plaintiff were to forego

drugs and alcohol he would be able to maintain regular attendance and be punctual within

customary tolerances.[3] *See, e.g.,* Tr. 1431 ("Continue marijuana cessation."), 1876 ("Reinforced

education on impacts of MJA to his mental illness and recommend enrolling in CD tx."), 1878

("Reinforced education on impacts of MJA to his mental illness and recommend enrolling in CD

tx."), 1882 ("Provided extensive education on MJA abuse and recommend enrolling in CD tx

which Ct declined. He wished to continue therapy to address issue."), 1948 ("Avoid smoking or

using Marijuana."). That is, the ALJ collected references to plaintiff's marijuana and alcohol use

and concluded, without cognizable medical support, that substance abuse so exacerbated

longstanding, acknowledged, severe mental health impairments that cessation of substance use

would remove the primary impediment to his employability.[4] *See, e.g.*, Tr. 810, 1872, 1874,

1878, 1880, 1882, 1935, 2024, 2851, 2934, 2976. That unreasonable inference is not supported

by the medical record.

   The ALJ made the improper medical conclusion that plaintiff's substance use, in

particular his use of marijuana, rendered plaintiff unable to maintain regular attendance and to be

punctual within customary tolerances by inferring that any debilitating psychological symptoms

---

[3] In order to reach the DAA analysis, the ALJ concluded that plaintiff could not work full time if all his severe impairments were considered, and necessarily rejected the reviewing physicians' opinions that no DAA analysis was needed because plaintiff could perform competitive work even when his substance use was considered. See Tr. 53.

[4] For example, the ALJ cites what appears on its face to be a damning admission: "claimant noted having a history of drug use, which he thought triggered a lot of his mental issues." Tr. 44. Yet when that statement is examined in context, it appears that the "drug use" to which he referred was his opinion that his suicidal ideation was caused by the anti-psychotic medication his mother gave him as a child: "S/I h/o drug use – which is what he thinks triggered a lot of this – Mom kept him medicated on Geodon as a child & his step[]dad assaulted him." Tr. 2980. Moreover, even if *plaintiff* was somehow referring to marijuana and alcohol triggering his mental health issues, it is telling that no *treating or examining provider* has ever explicitly agreed with him.

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 5

could be blamed on marijuana use, and by manufacturing an imaginary period of sobriety in which plaintiff's hospitalizations for paranoia and psychosis were the result only of medication non-compliance. For example, the ALJ puzzlingly cites general medical notes from scattered dates in 2006, 2007, and 2009 to suggest that plaintiff does better when on his medications and off of marijuana, Tr. 50 (citing Tr. 1034, 1123, 1157, 1173, 1395); cites to a July 2014 hospitalization to suggest that the only reason paranoia and delusions became debilitating while plaintiff was off marijuana was because he was also off his medications, Tr. 50 (citing Tr. 771); and cites mental health improvement in August, October, and November of 2014 as examples of how plaintiff was doing better psychologically due to being on medications and off of marijuana without acknowledging that the ALJ had previously cited plaintiff's marijuana use in September 2014 as a reason why his psychological condition was worsening, *compare* Tr. 50 (citing Tr. 783–96, 800, 802, 804, 806, 808) *with* Tr. 44 (citing Tr. 810). In *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014), the Ninth Circuit noted: "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." Here the ALJ impermissibly cherry-picked the medical record, disregarded contrary evidence, mischaracterized "affirmative" evidence, and concluded that plaintiff's inability to maintain regular attendance and to be punctual within customary tolerances stemmed from his marijuana and alcohol use. *See, e.g.*, *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014); *see also, e.g.*, *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."); *Switzer v.*

*Heckler*, 742 F.2d 382, 385–86 (7th Cir. 1984) ("[T]he Secretary's attempt to use only portions

[of a report] favorable to her position, while ignoring other parts, is improper.").

      The Court finds that the ALJ harmfully erred in assessing RFC and reviewing the medical

and other evidence during the DAA analysis by failing to support with substantial evidence the

conclusion that if plaintiff stopped substance use he would be able to maintain regular attendance

and be punctual within customary tolerances. Nonetheless, the Court remands for further

administrative proceedings to revisit the sequential DAA evaluation process from the RFC

assessment forward because the record needs to be further developed regarding whether DAA is

material to plaintiff's disability. *See Garrison*, 759 F.3d at 1022. On remand, the ALJ's DAA

analysis and review of the evidence, which may include supplemental medical examinations and

consultation with a medical expert, is governed by **Social Security Ruling 13-2p**, which sets

forth how a DAA analysis should be conducted in cases involving co-occurring mental

disorders.[5] SSR 13-2p(7) provides:

> a. Many people with DAA have *co-occurring mental disorders*;
> that is, a mental disorder(s) diagnosed by an acceptable
> medical source in addition to their DAA. We do not know of
> any research data that we can use to predict reliably that any
> given claimant's co-occurring mental disorder would improve
> or the extent to which it would improve, if the claimant were to
> stop using drugs or alcohol.
>
> b. To support a finding that DAA is material, we *must* have
> evidence in the case record that *establishes* that a claimant with
> a co-occurring mental disorder(s) would not be disabled in the
> absence of DAA. *Unlike cases involving physical impairments,*

---

[5] Although Social Security Rulings do not have the force of law, they constitute Social Security
Administration interpretations of the statute it administers and of its own regulations. The courts
will therefore defer to Social Security Rulings unless they are plainly erroneous or inconsistent
with the Act or regulations. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989)
(citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–45
(1984)).

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 7

> *we do not permit adjudicators to rely exclusively on medical expertise and the nature of a claimant's mental disorder.*
>
> c. We may purchase a CE in a case involving a . . . co-occurring mental disorder(s). . . .
>
> d. We will find that DAA is *not* material . . . to the determination of disability and allow the claim *if the record is fully developed and the evidence does not establish that the claimant's co-occurring mental disorder(s) would improve to the point of nondisability in the absence of DAA.*

SSR 13-2p (emphases added), *available at* 2013 WL 621536, at *9. The Court notes that ALJ's determinations with respect to the initial five-step evaluation process that occurred prior to the DAA analysis have not been disturbed, except to the extent the ALJ reexamines the medical evidence and chooses, after revisiting the DAA analysis, to revise the initial RFC assessment that plaintiff is "unable to maintain regular attendance and to be punctual within customary tolerances" in order to omit the qualifier "secondary to mood instability caused by substance abuse." *See* Tr. 44.

**2. Other Issues**

The Court rejects plaintiff's contention that the ALJ erred by declining to admit evidence prior to 2005, which was one year before plaintiff turned 18 years old. To be entitled to receive child disability benefits, a claimant like plaintiff who applied when over the age of 18 must establish a disability that began prior to the age of 22, and the earliest date such benefits can be paid is the month of attainment of the age 18. 20 C.F.R. § 404.350(a)(5); Program Operations Manual System ("POMS") DI 25501.330(A)(5), *available at* https://secure.ssa.gov/poms.nsf/lnx/0425501330. Although plaintiff alleges that the onset date of his disability was at birth, the relevant inquiry for his entitlement for childhood disability benefits is whether plaintiff can demonstrate that he was disabled between the ages of 18 and 22. Moreover, plaintiff has failed to

1   cite any information from the period prior to 2005 that the ALJ has not already considered

2   because such information (such as an early-childhood brain injury) are reported in the extant

3   record.

4       The Court finds that plaintiff's contention regarding post-hearing evidence submitted to

5   the Appeals Council is mooted by the remand. On remand, the ALJ may consider any evidence

6   that was submitted to the Appeals Council but not previously submitted to the ALJ. Because the

7   Court remands for reconsideration of the medical evidence and further development of the

8   record, the Court reverses the ALJ's determinations about the testimony by plaintiff and

9   plaintiff's brother because a review of this testimony regarding symptoms and daily activities is

10  inextricably intertwined with a review of the medical evidence. *See* 20 C.F.R. § 404.1529.

11  **CONCLUSION**

12      For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is

13  **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

14      On remand, the ALJ should revisit the DAA analysis from the assessment of RFC

15  forward and further develop the record, which may include supplemental medical examinations

16  and consultation with a medical expert. In revisiting the DAA analysis, the ALJ should be guided

17  by Social Security Ruling 13-2p. The Court does not disturb the ALJ's determination that, in

18  accordance with the five-step sequential evaluation process, plaintiff is disabled when all

19  impairments, including substance use, are considered.

20      DATED this 1st day of April, 2019.

21

22                                                              BRIAN A. TSUCHIDA

23                                                              Chief United States Magistrate Judge

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 9